UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MENES ANKH EL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-00852-WTL-DKL |
| ) | |
| WAYNE SHELTON Prosecutor (herein ) | |
| known as State of Indiana), Detective, in ) | |
| professional and private capacities, ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motions for Summary Judgment**

Plaintiff Menes Ankh El (aka Wendell Brown) brought this action to 42 U.S.C. § 1983 against Indianapolis Metropolitan Police Department Detective Wayne Shelton and a number of other defendants for malicious prosecution based on the filing of forgery charges that were later dropped. In the Entry of December 16, 2015, all claims were dismissed except for the malicious prosecution claim against Shelton. Ankh El has moved for summary judgment and Shelton has responded with a cross-motion for summary judgment. For the reasons that follow, Shelton's motion for summary judgment [dkt 65] is **granted** and Ankh El's motion for summary judgment [dkt 61] is **denied**.

**I. Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable

inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001). Even though the parties have filed cross motions for summary judgment, the general standards for summary judgment do not change: with "cross summary judgment motions, we construe all facts and inferences therefrom 'in favor of the party against whom the motion under consideration is made.'" *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005)).

## II. Undisputed Facts

Consistent with the foregoing standard, the following statement of facts is taken from evidence presented in support of both motions for summary judgment.

In 2011, Ankh El issued a number of checks to the Marion County Clerk's Office for payment of traffic citations and child support. According to Anhk El, those checks cleared without incident. But Shelton nonetheless later instituted criminal forgery charges against him based on those checks.

The inquiry into the alleged forgery began in the fall of 2012.[1] On September 13, 2012, Melanie Chastain, Chief Financial Officer for the Marion County Clerk's Office, contacted Shelton about Ankh El. Chastain recognized Ankh El from a news story and wanted to report him for presenting checks from his Chase account number XXXXX7532 to the Clerk's Office for payment of child support and traffic violations. Chastain reported that the checks submitted by Ankh El were all returned from Chase as "unable to locate account."

On September 17, 2012, Shelton met with Chastain and obtained copies of nine checks presented by Ankh El to the Clerk's Office, nine letters mailed to Ankh El's address, and five response letters from Ankh El. The following table lists the checks Ankh El presented to the Clerk's Office along with the dollar amounts and the reason for payment.

| Check Number | Amount | Date | Purpose |
|---|---|---|---|
| 1003 | $225.00 | 5/16/2011 | Traffic citation |
| 1004 | $281.25 | 5/16/2011 | Traffic citation |
| 1005 | $31.25 | 5/16/2011 | Traffic citation |
| 1006 | $337.50 | 5/16/2011 | Traffic citation |
| 1007 | $90.00 | 5/16/2011 | Traffic citation |
| 1008 | $165.00 | 5/16/2011 | Traffic citation |
| 1009 | $125.00 | 5/16/2011 | Traffic citation |
| 1012 | $20,000.00 | 5/31/2011 | Child support |
| 1278 | $136.00 | 12/15/2011 | Traffic citation |
| 1289 | $225.00 | 1/9/2012 | Traffic citation |
| | | | Total = $21,616.00 |

Shelton subpoenaed banking information for Chase account number XXXXX7532. The information indicated that Ankh El opened the account on December 15, 2006. Ankh El deposited $296.00 into the account on December 28, 2006. He continued to make deposits and

---

[1] The following account of the investigation is taken from Shelton's Affidavit for Probable Cause in the criminal case. To the extent that Ankh El questions the appropriateness of this as evidence regarding Shelton's investigation, it is sworn to under penalties for perjury, is based on Shelton's personal knowledge, and is admissible to show Shelton's investigation.

withdrawals throughout January, February, and March 2007. At the end of March 2007, this account had a balance of negative $140.11.

In April 2007, Chase sent a statement to Ankh El's home address. The statement read, "Beginning Balance -$140.11 and Ending Balance -$150.11." In May 2007, Chase sent another statement indicating that his account had a beginning balance of -$150.11 and an ending balance of $0.00. On May 8, 2007, Chase closed Ankh El's account due to the negative balance. Ankh El's address on file with Chase was 1317 Congress Avenue, not 1443 West 29th Street or P.O. Box 88045 as printed on check numbers 1003 through 1289.

After speaking with Chastain, Shelton met with Patty Morris, Finance Manager for the Clerk's Office. Morris stated that on May 31, 2011, Ankh El presented check number 1012 for $20,000.00 to Carrie Houston, Senior Accounting Technician for the Clerk's Office. Ankh El instructed Houston to accept the check as payment for the child support he owed. Houston contacted Morris, who was already familiar with Ankh El, and showed her the check. Morris informed Ankh El that the Clerk's Office was unable to accept his check as payment. Ankh El demanded that the Clerk's Office process his payment. To avoid creating a disturbance, the Clerk's Office collected the check.

Morris forwarded the check to Kim Logan, Deputy Treasurer for the Indiana State Treasurer's Office, for processing. The State Treasurer's Office attempted to process the check, but it was returned on June 15, 2011 as "unable to locate account." Logan verified to Shelton that no child support payment was posted or disbursed. She provided Shelton with a copy of check number 1012 and the not sufficient funds report.

Morris contacted Ankh El and informed him that the Clerk's Office was unable to accept any checks from him because of the status of his checking account. Ankh El sent Morris a letter

demanding that she return his check, issue him a check for $20,000.00, or show his child support as paid in full. He wrote, "If I have not received a written response within the allotted time, I will be forced to initiate legal proceedings."

Shelton located a criminal history for Ankh El under gallery number 409402. He created a photo array under Lineup ID # 108341 using a booking photo of Ankh El from an arrest on April 17, 2012. Morris identified Ankh El in the lineup as the individual who presented check number 1012 to her on May 31, 2011.

Shelton provided Emily Searle, assistant in the Marion County Prosecutor's Office Child Support Division, Ankh El's name and date of birth. Searle verified that Ankh El was the non-custodial parent of nine-year-old T.B. The court ordered Ankh El to pay child support for T.B. Ankh El's child support payments were $18,412.00 in arrears. Shelton spoke with Toni Davidson, the custodial parent of T.B., who confirmed Ankh El's obligation to pay child support.

On September 12, 2012, Reginald Walton, Administrative Assistant for the Department of Metropolitan Development (DMD), contacted Shelton. Walton indicated that on February 9, 2012, Ankh El applied for three public land purchases and presented two personal checks from his closed Chase checking account and a letter from "Noble Menes Ankh El" (identified in the letter as Wendell Brown's "partner in commerce"). There is a $200.00 fee that is required with each land purchase application. If the applicant successfully purchases the property, then the $200 fee is credited to the purchase price. DMD had not attempted to cash the checks presented by Ankh El because the properties had not made it to closing. Walton provided Shelton with the following documentation presented to him by Ankh El:

    1. Three public land purchase applications;
    2. Two personal JPMorgan Chase Bank checks (#6103768 and #6103769);
    3. Two personal financial statements;
    4. Two copies of Ankh El's IN identification card (XXXX-XX-3557); and

      5. One letter addressed to Walton from Noble Menes Ankh El.

The documents showed that Ankh El was attempting to purchase three properties owned by the City of Indianapolis. Walton provided tax title deeds verifying the City of Indianapolis as the owner of the properties. Shelton showed Walton Lineup ID #108341. Walton identified Ankh El as the person who presented check numbers 6103768 and 6103769 to him on February 9, 2012. Check numbers 6103768 and 6103769 were from Chase account number XXXXX7532 and preprinted for $200.00 each.

      Shelton visited the properties Ankh El was attempting to purchase. Each property appeared vacant, but Shelton located mail addressed to Wendell Brown in the mailbox at 1357 West 23rd Street and Indiana Bureau of Motor Vehicle (BMV) records listed Ankh El's home address at 1357 West 23rd Street, even though this property was owned by the City of Indianapolis. On October 12, 2012, Shelton met with Jennifer Williams, Accounting Technician for the Marion County Clerk's Office. Williams provided copies of each transaction for which Ankh El used his closed Chase checking account.

      On March 13, 2013, Shelton filed a probable cause affidavit and charging information in *State of Indiana v. Wendell Brown*, 49G03-1303-FC-016587. The court found probable cause and issued a warrant for Ankh El's arrest. Ankh El was charged with nine counts of forgery as a Class C Felony under Indiana Code § 35-43-5-2(b)(4). On May 21, 2013, counts eight and nine were dismissed by the Marion County Prosecutor's Office. The Prosecutor's Office dismissed the remaining counts on September 13, 2013.

### III. Discussion

      Ankh El argues that he is entitled to judgment as a matter of law on his malicious prosecution claim. Shelton argues that Ankh El's claims are barred by the statute of limitations,

that he failed to plead a separate constitutional violation to support his federal malicious prosecution claim, and that there is no evidence that Shelton acted maliciously or without probable cause. Lastly, Shelton argues that he is entitled to qualified immunity. As discussed more fully below, Shelton is entitled to summary judgment on the merits of Ankh El's malicious prosecution claim because he had probable cause and did not act with malice, the Court will not address the other arguments.

To state a malicious prosecution claim under § 1983, a plaintiff must demonstrate that: (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir. 1996). Under Indiana law, "the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Golden Years Homestead, Inc. v. Buckland,* 557 F.3d 457, 462 (7th Cir. 2009) (internal citations omitted).

The first and fourth elements of an Indiana malicious prosecution claim are met here – Shelton caused a prosecution to be instituted against Ankh El and that action was terminated, though dismissal, in Ankh El's favor. The parties disagree, however, whether Shelton had probable cause to institute the action and whether Shelton acted with malice.

A. *Probable Cause*

Shelton first argues that there was probable cause for Ankh El's arrest. "Probable cause to commence criminal proceedings" in the context of malicious prosecution exists when a reasonable inquiry would induce a reasonably intelligent and prudent person to believe that the

accused committed the crime charged. *Owens v. Downey*, 150 F. Supp. 3d 1008, 1018 (S.D. Ind. 2015) (quoting *Glass v. Trump Indiana, Inc.*, 802 N.E.2d 461, 466–67 (Ind. Ct. App. 2004)). Indiana courts have held that a judicial determination of probable cause in a criminal proceeding constitutes prima facie evidence of probable cause in a subsequent civil lawsuit alleging malicious prosecution. *Id.* The plaintiff may rebut such a prima facie case of probable cause by introducing evidence that shows the finding of probable cause was induced by false testimony, fraud, or other improper means such as the defendant withholding material facts at the hearing. *Id.* But "'the prima facie case cannot be overcome by a showing of a negligent failure to investigate thoroughly where there is some factual basis for bringing a claim. More than mere negligence must be shown to rebut the prima facie case.'" *Cornwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. Ap. 1996) (quoting *K Mart Corp. v. Brzezinski*, 540 N.E.2d 1276, 1280 (Ind. Ct. App. 1989)).

Ankh El was charged with nine counts of forgery under Ind. Code 35-43-5-2. That statute makes it a felony to: "(b) . . . with intent to defraud, make, utter, or possess a written instrument in such a manner that it purports to have been made: . . . (4) by authority of one who did not give authority." Here, the state court found probable cause that Ankh El has committed this crime existed and issued a warrant for his arrest. Ankh El must therefore rebut this prima facie evidence of probable cause. *See Owens*, 150 F.Supp.3d at 1018. In support of his conclusion that there was no probable cause, Ankh El argues that, when asked, other individuals involved in the investigation were unable to prove that the checks were invalid and that there were no allegations of forgery from the bank. He further submits what he purports to be are cleared checks for the transactions at issue, a credit report issued in 2014 showing that the child support account was paid, and a driver record issued in 2016 showing that his traffic tickets had been paid.

Ankh El has failed to rebut the prima facie evidence of probable cause. He has presented no evidence that the finding of probable cause was based on false testimony, fraud, or other improper actions on Shelton's part. In other words, at the time he submitted the probable cause affidavit, Shelton had probable cause to believe Ankh El had committed this crime. *Wolf v. Napier*, 742 F.Supp 1014, 1022 (N.D. Ind. 1990) ("As a general proposition, probable cause should be examined in the light of the circumstances that were known at the time that the Affidavit for Probable cause was filed."). Shelton's investigation included a review of records that showed the checks at issued were returned unpaid as "unable to locate account" and a review of the bank account from which the checks were drawn, which revealed that the account had been closed for insufficient funds. The fact that there was no representation of forgery from the bank is irrelevant because such an allegation is not an element of the crime of forgery. *See* Ind. Code § 35-43-5-2(b)(4). Further, the cleared checks submitted by Ankh El are insufficient to show that Shelton did not have probable cause. The account number on the checks is completely redacted, has not been established that those checks came from the same account which Shelton found to have been closed and was the basis of the forgery charges. In addition, the credit report submitted by Ankh El was produced in 2014 and thus would not have been available to Shelton at the time of his investigation in 2012. Further, while it appears to show that child support obligation is now paid, the report also reflects that the debt was still owed in 2012, when Shelton conducted the investigation. Similarly, the driving record submitted by Ankh El was created in 2016. It thus has no relevance to Shelton's 2012 investigation. To the extent Ankhl El argues that Shelton could or should have done more to investigate, once probable cause existed, he had no duty to do so. *See Kompare v. Stein*, 801 F.2d 883, 889–90 (7th Cir. 1986) ("The Kompares are attempting to impose on Richmond a duty to investigate or to investigate thoroughly. Plaintiffs

have failed to cite any case imposing a duty to investigate on either a coroner or a policeman. In fact, the law appears to be just the opposite, *i.e.,* that the police (and, presumably, the coroner) have no constitutional duty to keep investigating a crime once they have established probable cause.").

In short, Shelton conducted a thorough investigation and reasonably concluded that Ankh El had committed forgery.

### 2. Malice

Shelton also argues that he had no malicious intent in bringing charges against Ankh El. In this context, malice may be shown "by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (quoting *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009)). As discussed above, there was probable cause for Ankh El's arrest. And there is no evidence that Shelton had any personal animosity toward Ankh El.

Ankh El argues that Shelton retaliated against him for filing previous lawsuits against the county and for failing to accept a plea agreement on unrelated charges. But Ankh El has failed to present any evidence that would support a reasonable inference that Shelton's actions in charging Ankh El with forgery were motivated by retaliation. To the extent that Ankh El argues that Shelton's investigation was not thorough enough, as discussed, he has not shown that the investigation was insufficient.

Ankh also argues a number of actions on Shelton's part raise an implication of malice. First, Ankh El claims that malice can be inferred from the fact that employees of the Clerk's Office failed to respond to his letters demanding proof that the checks were invalid when the

BMV and Clerk's Office marked the debts as "paid." But Shelton investigated the records of the bank account itself and whether or not these employees provided proof to Ankh El that the checks did not clear is not relevant to whether or not Shelton's investigation was thorough enough. Ankh El also argues that malice can be inferred from the fact that there was no evidence that Chase alleged forgery. But, as already discussed, an allegation of forgery from the bank is not an element of the crime. Ind. Code 35-43-5-2. It is only necessary that the written instrument be made without Chase's authority, a fact that can be presumed based on Shelton's conclusion that the account did not exist. Ankh El next claims that state and local officials conspired with Shelton to initiate criminal proceedings against him. The evidence that Ankh El relies on to support this claim is emails between the Clerk's Office and the Marion County Sheriff's Department. Although these emails discuss the investigation of the alleged forgery, these emails do not show that Shelton conspired with anyone to deprive Ankh El of his constitutional rights. Ankh El also suggests that malice can be inferred from the allegation that Shelton interviewed him under the allegedly false pretense of investigating his internal affairs complaints against police officers. In support, Ankh El submits what appears to be a transcript of the interview. But nothing in the transcript compels a conclusion that Shelton acted maliciously or had personal animosity toward Ankh El. Finally, Ankh El claims that Shelton misused grand jury subpoenas to obtain his banking information. But the fact that Shelton used a grand jury subpoena to obtain Ankh El's banking information does not imply malice on Shelton's part.

In short, Ankh El has failed to establish that Shelton acted maliciously in commencing criminal proceedings against him.

### IV. Conclusion

For the foregoing reasons, Shelton has shown that he is entitled to judgment as a matter of law on Ankh El's malicious prosecution claim. Accordingly, Shelton's motion for summary judgment [dkt 65] is **granted** and Ankh El's motion [dkt 61] is **denied**. Judgment consistent with this Entry and the Entry of December 16, 2015 shall now issue.

**IT IS SO ORDERED.**

Date: 3/24/17

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

MENES ANKH EL
233632
INDIANAPOLIS RE-ENTRY EDUCATIONAL FACILITY
401 North Randolph Street
Electronic Service Participant – Court Only

Adam Scott Willfond
JACOBS LAW LLC
adam.willfond@indy.gov

Lynne Denise Hammer
OFFICE OF CORPORATION COUNSEL
lynne.hammer@indy.gov

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov